IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KISHORE JAYAKUMAR
1210 Massachusetts Ave. NW
Apt. 710
Washington, DC 20005

      Plaintiff,

v.

MICHIGAN HEALTH CLINICS, P.C.
d/b/a MI HEALTH CLINIC
d/b/a MICHIGAN HEALTH
CLINIC d/b/a MICHIGAN
HEALTH CLINICS d/b/a
MICHIGAN SKIN CLINIC  d/b/a
MICHIGAN SKIN CLINICS
3925 Fortune Boulevard
Saginaw, MI 48603

DAVID STOCKMAN
5775 McCarty Road
Saginaw, MI 48603

MAGDALENA PEREZ
4355 Augustine St.
Saginaw, MI 48638

BRIAN HART
3684 Lamplighter Dr.
Saginaw, MI 48603

      Defendants.

Civil Action No. 1:24-cv-01842-ABJ

## AMENDED COMPLAINT

COMES NOW, Kishore Jayakumar, by and through his attorneys, James L. Ellison II, Esq. and the law office of Ellison Sadri, LLC, and hereby sues Defendants Michigan Health Clinics, P.C., David Stockman, Magdalena Perez, and Brian Hart (collectively referred to herein as "Defendants"), and states as follows:

1.     Defendants failed to pay Plaintiff wages for most of his employment.

2.      Plaintiff brings this action against Defendants to recover damages for Defendants' willful failure to pay him lawfully-earned wages, in violation of the District of Columbia Wage Payment and Collection Law ("DCWPCL"), D.C. Code § 32-1301, *et seq.* Plaintiff further asserts claims for breach of contract and fraud against Defendant Michigan Health Clinics, P.C. and the individual Defendants.

### Jurisdiction and Venue

3.      Jurisdiction is proper pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) because the matter in controversy under the DCWPCL exceeds $75,000.00 and the Plaintiff is domiciled in a different state from that of the Defendants. This Honorable Court may also adjudicate Plaintiff's claims for breach of contract and fraud under 28 U.S.C. § 1367 (supplemental jurisdiction).

4.      Venue is proper pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the District of Columbia.

### Parties

5.      Plaintiff Kishore Jayakumar is an adult resident of the District of Columbia.

6.      Defendant Michigan Health Clinics, P.C. is a Michigan corporation. Its principal place of business is located at 3925 Fortune Boulevard, Saginaw, MI 48603. It does business as "MI Health Clinic," "Michigan Health Clinic," "Michigan Health Clinics," "Michigan Skin Clinic," and "Michigan Skin Clinics." Its registered agent for service of process is David Stockman, 3925 Fortune Blvd., Saginaw, MI 48603.

7.      Defendant David Stockman is an adult resident of Michigan. He resides at 5775 McCarty Road, Saginaw, MI 48603. He is an owner and officer of Defendant Michigan Health Clinics, P.C. He exercises principal control over the operations of Michigan Health Clinics, P.C. — including its pay practices.

8.     Defendant Magdalena Perez is an adult resident of Michigan. She resides at 4355 Augustine St., Saginaw, MI 48638. At all relevant times herein, she was the Chief Administrative Officer of Michigan Health Clinic.

9.     Defendant Brian Hart is an adult resident of Michigan. He resides at 3684 Lamplighter Dr., Saginaw, MI 48603. He is the Chief Operating Officer of Michigan Health Clinic.

## Factual Allegations

10.     Defendants own and operate Michigan Health Clinic, a multi-specialty clinic located at 3925 Fortune Boulevard, Saginaw, MI 48603.

11.     On or about August 17, 2023, Defendant Stockman falsely told Plaintiff that he could make "unlimited money." Defendant Stockman assured Plaintiff that his compensation would be based on Relative Value Units ("RVU").

12.     On or about August 23, 2023, Defendant Perez stated to Plaintiff, "I wanted to set up a phone call with you, myself and Brian [Hart]. We can go over some contract terms and a few other items so we are able to move forward."

13.     On or about August 29, 2023, Defendant Stockman stated to Plaintiff, "we have no problems paying on RVU [Relative Value Unit]."

14.     On or about September 20, 2023, Defendants extended a job offer to Plaintiff for the position of Dermatologist at Michigan Health Clinic.

15.     Defendant Perez and Plaintiff negotiated the terms of Plaintiff's employment contract. During the negotiations, it was established that Plaintiff would work remotely from the District of Columbia on a part-time basis and his salary would be RVU-based.

3

16.     On or about November 1, 2023, Defendant Michigan Health Clinics, P.C. and Plaintiff executed an Employment Agreement, marked and attached hereto as Exhibit 1. Per the Employment Agreement, Plaintiff was supposed to receive compensation based on Relative Value Units ("RVU") "on the 1st of each month for any RVUs generated greater than 30 days after completion of [the patient's] office visit note." The net RVU for compensation purposes was calculated as the Total RVU minus the Practice Expense RVU for each service provided.

17.     Per the Employment Agreement, "Employer shall provide Physician with real-time access to or monthly electronic reports of Physician's complete RVU data." Plaintiff's compensation rate was Sixty Dollars ($60.00) per net RVU, and the RVU-based compensation was to be calculated on a monthly basis. The Employment Agreement "shall bind and benefit the parties and their respective legal representatives, executors, administrators, subsidiaries, successors and assigns."

18.     On or about November 29, 2023, Plaintiff commenced his employment with Defendants as a Dermatologist.

19.     Defendants hired Plaintiff to provide virtual dermatological services to patients from his office in the District of Columbia.

20.     At all relevant times, Plaintiff's work for Defendants was performed in the District of Columbia.

21.     Utilizing the agreed-upon compensation rate of Sixty Dollars ($60.00) per net RVU, and multiplying Plaintiff's net RVUs by Sixty Dollars ($60.00), Defendants should have paid Plaintiff the following amounts:

| Period | Gross Wages Earned |
|---|---|
| November 2023 – January 2024 | $31,587.00 |
| February 2024 | $21,657.00 |
| March 2024 | $29,995.20 |
| April 2024 | $31,917.00 |
| May 2024 | $19,713.00 |

| June 2024 | $7,103.40 |
|---|---|
| Total: | $141,972.60 |

22. Defendants failed to timely provide Plaintiff with his RVU data from November of 2023 to January of 2024. The RVU data which Defendants did provide Plaintiff for this time period was inaccurate and understated the correct number of net RVUs.

23. In early January of 2024, Defendant Perez falsely told Plaintiff that he would be paid on a monthly basis.

24. On or about January 31, 2024, Defendants Stockman and Perez falsely told Plaintiff that he would be paid properly.

25. Defendants paid Plaintiff $10,500.00 in gross wages on approximately February 12, 2024. This amount was substantially less than what Plaintiff was legally entitled to for the November of 2023 to January of 2024 time period, *supra*. Throughout Plaintiff's employment, Defendants refused to properly compensate Plaintiff and they repeatedly ignored his inquiries regarding his RVU data and owed wages.

26. Defendants have not paid Plaintiff any wages since the $10,500.00 payment.

27. Between January and March of 2024, Defendant Perez did not address Plaintiff's legitimate concerns about his wages.

28. Defendants did not provide Plaintiff with his RVU data from March to June of 2024, nor did Defendants pay Plaintiff for wages he was owed from February to June of 2024.

29. On or about April 9, 2024, Plaintiff told Defendant Stockman that he was not properly compensated for the November of 2023 to January of 2024 time period, and that he did not receive paychecks for February or March of 2024. Defendant Stockman falsely told Plaintiff, "I will get this resolved asap." Defendant Stockman falsely told Plaintiff that he would receive direct deposits by the end of the week.

30. On or about April 16, 2024, Defendant Stockman falsely told Plaintiff, "By the end of week I will have a streamlined process for you for all future payments." By close of business on April 19, 2024, Plaintiff had not been paid.

31. On or about April 23, 2024, Defendant Stockman falsely told Plaintiff that "all the items were processed on last week." Defendants did not pay Plaintiff what he was owed.

32. On or about April 25, 2024, Defendant Stockman falsely told Plaintiff that payroll had previously been submitted. Plaintiff told Defendant Stockman what he was owed from November of 2023 to March of 2024. Defendant Stockman did not respond to Plaintiff's text messages about his wages dated May 1 and 6, 2024.

33. On or about May 3, 2024, Defendant Hart falsely told Plaintiff, "we will wire you today."

34. On or about May 7, 2024, Defendant Hart falsely told Plaintiff that he would be paid by the end of the week.

35. Defendant Stockman falsely told Plaintiff that payment had been issued on May 8, 2024.

36. On or about May 9, 2024, Defendant Hart falsely told Plaintiff that a bank transfer had been made to his account. Defendant Hart failed to provide RVU data to Plaintiff.

37. On or about May 10, 2024, Defendant Hart falsely claimed that he was not aware of other employees who had not been paid.

38. On May 10, 2024, Defendants sent Plaintiff a second paycheck corresponding to $20,817.00 in gross wages. However, this check was returned for insufficient funds.

39. Defendants owe Plaintiff approximately $131,472.60 in unpaid wages ($141,972.60 – $10,500.00).

40. On May 21, 2024, due to Defendants' material breach of the Employment Agreement, numerous false representations, and repeated failure to pay Plaintiff the wages he was legally owed, Plaintiff resigned from employment effective June 23, 2024.

6

41. In January of 2025, Defendant Michigan Health Clinics, P.C. issued an incorrect 2024 W-2 Form to Plaintiff. The incorrect 2024 W-2 Form referenced the bounced check in the amount of $20,817.00, *supra*.

42. Defendant Perez falsely told Plaintiff that he would receive a Fifty Percent (50%) reimbursement for his April, May, and June of 2024 health insurance premiums.

43. Defendants Stockman, Perez, and Hart deliberately did not tell Plaintiff about Defendant Michigan Health Clinics, P.C.'s financial struggles and/or refusal to pay other employees, either before he signed the Employment Agreement or thereafter.

44. Defendant David Stockman has hired and fired employees on behalf of Michigan Health Clinics, P.C.

45. Defendant David Stockman hired Plaintiff.

46. Defendant David Stockman set Plaintiff's rate and manner of pay.

47. Defendant David Stockman supervised Plaintiff's work.

48. Defendant David Stockman decided when and how much to pay Plaintiff.

49. Defendant David Stockman made repeated misrepresentations to Plaintiff regarding Plaintiff's pay:



50. At all relevant times, Defendant Perez was a corporate officer of Defendant Michigan Health Clinics, P.C.

51. Defendant Perez had the authority to hire Plaintiff and she signed his Employment Agreement.

52. Defendant Perez influenced Plaintiff's pay structure and had control over the rate and method of Plaintiff's pay.

53. Defendant Perez had the authority to supervise Plaintiff and discipline him.

54. Defendant Perez had the authority to maintain Plaintiff's employment records.

55. Defendant Perez thereby exercised substantial control over the terms and conditions of Plaintiff's employment.

56. At all relevant times, Defendant Hart was a corporate officer of Defendant Michigan Health Clinics, P.C.

57. Defendant Hart had the power to hire Plaintiff and discipline him.

58. Defendant Hart had the authority to supervise Plaintiff and determine the rate and method of his pay.

59. Defendant Hart had the authority to maintain Plaintiff's employment records.

60. In or about March of 2024, Defendant Hart took over Defendant Perez's job duties.

61. Defendant Hart exercised substantial control over the terms and conditions of Plaintiff's employment.

62. At all relevant times, each Defendant had the power to hire and fire Plaintiff.

63. At all relevant times, each Defendant had the power to control Plaintiff's work schedule.

64. At all relevant times, each Defendant had the power to supervise and control Plaintiff's work.

65. At all relevant times, each Defendant had the power to set Plaintiff's rate and manner of pay.

66. At all relevant times, each Defendant was aware that they were legally required to timely pay Plaintiff all wages legally due to him.

## COUNT I
## FAILURE TO PAY WAGES UNDER THE DCWPCL
## (ALL DEFENDANTS)

67. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

68. Each Defendant was an "employer" of Plaintiff within the meaning of the DCWPCL. D.C. Code § 32-1301(1B).

69. The DCWPCL requires that all professional employees be paid at least once per month; provided, however, that an interval of not more than ten (10) working days may elapse between the end of the pay period covered and the regular payday designated by the employer. D.C. Code § 32-1302.

70. For purposes of the DCWPCL, "wages" means all monetary compensation after lawful deductions, owed by an employer, including remuneration promised pursuant to a written contract for employment.

9

D.C Code § 32-1301(3).

71.    Defendants violated the DCWPCL by knowingly failing to timely pay Plaintiff all wages due.

72.    Defendants' violations of the DCWPCL were willful.

73.    For their violations of the DCWPCL, Defendants are liable to Plaintiff for unpaid wages, an amount equal to three times the amount of unpaid wages as liquidated damages, reasonable attorney's fees and expenses, court costs, interest, and any other relief deemed appropriate by the Court. *See Sivaraman v. Guizzetti & Assocs.*, 228 A.3d 1066, 1072 (D.C. 2020) ("[T]reble damages are mandatory, not discretionary, if requested."); *Martinez v. Asian 328, LLC*, 220 F. Supp. 3d 117, 123 (D.D.C. 2016) ("[T]he liquidated-damages provision of the DCWPCL awards treble damages as liquidated damages *in addition to* the actual damages in the form of unpaid wages.").

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**COUNT II**
**BREACH OF CONTRACT**
**(ALL DEFENDANTS)**

74.    Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

75.    Defendant Stockman, Defendant Perez, and Defendant Hart were involved in offering Plaintiff a job and negotiating his employment contract.

76.    On October 19, 2023, Plaintiff and Defendant Michigan Health Clinics, P.C. executed his Employment Agreement. Defendant Perez signed the Employment Agreement on behalf of Defendant Michigan Health Clinics, P.C.

77.    Due to the individual Defendants' false representations as previously pled, Defendant Michigan Health Clinics, P.C.'s corporate veil may be pierced to hold the individual Defendants liable for breach of the Employment Agreement.

78.    The individual Defendants have ownership and interest in Defendant Michigan Health

Clinics, P.C. based on their level of control over the Corporation.

79.   Due to the individual Defendants' false representations as previously pled, justice and equity justifies piercing of the corporate veil.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## COUNT III
## FRAUD
## (ALL DEFENDANTS)

80.   Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

81.   Defendants Stockman, Hart, and Perez falsely stated to Plaintiff that he would be paid based on net RVUs, thereby fraudulently inducing Plaintiff to sign the Employment Agreement.

82.   During Plaintiff's employment, Defendants Stockman, Hart, and Perez falsely stated to Plaintiff on numerous occasions that he would be paid. Defendants Stockman, Hart, and Perez thereby fraudulently induced Plaintiff to continue his employment.

83.   Defendants Stockman, Hart, and Perez made factual misrepresentations with knowledge of their falsity and with the intent to deceive Plaintiff.

84.   Defendants Stockman, Hart, and Perez acted within the course and scope of their employment as agents of Defendant Michigan Health Clinics, P.C.

85.   Plaintiff justifiably relied on Defendants' misrepresentations in accepting and continuing employment.

86.   Defendants Stockman, Hart, and Perez had no intention of performing under the terms of the Employment Agreement. They had no intention of paying Plaintiff the wages he had earned, and they did not disclose their intention not to pay him his earned wages.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, Plaintiff demands judgment against Defendants, jointly and severally, as follows:

11

a.      Unpaid wages in the amount of $131,472.60;

b.      Liquidated damages in the amount of $394,417.80;

c.      Unpaid fringe benefits in the amount of $636.90, and liquidated damages in the
amount of $1,910.70;

d.      Punitive damages;

e.      Award Plaintiff pre-judgment and post-judgment interest as permitted by law;

f.      Award Plaintiff attorney's fees and costs as permitted by law;

g.      And for such other and further relief as this Honorable Court deems just and equitable.

Date: October 13, 2025                  Respectfully submitted,

_____/s/_____
James L. Ellison II, Esq. (Bar No. 1013008)
Ellison Sadri, LLC
2086 Generals Highway, Ste. 201
Annapolis, Maryland 21401
Tel: (410) 974-6000
Email: jellison@eslawgroup.com

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 13th day of October, 2025, a copy of Plaintiff's Amended Complaint (Redline and Clean Versions), Plaintiff's Employment Agreement marked as Exhibit 1, and Summons to be issued to Defendants Brian Hart and Magdalena Perez, were sent via USPS to:

David Stockman
5775 McCarty Road
Saginaw, MI 48603

*Individual Defendant and*
*Resident Agent for Defendant Michigan*
*Health Clinics, P.C.*

_____/s/_____
James L. Ellison II, Esq. (Bar No. 1013008)

12