UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

DR. KISHORE JAYAKUMAR,

Plaintiff,

Case No. 1:26-cv-11779
Hon. Michael C. Martin

v.

consolidated with

JENNIFER PENNING

Case No. 1:26-cv-13091

Defendant.

---

**DEFENDANT JENNIFER PENNING'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

*** Oral Argument Requested ***

Defendant Jennifer Penning, through her counsel, Smith Haughey Rice & Roegge, moves under Federal Rules of Civil Procedure 12(b)(6) to dismiss with prejudice both counts of Plaintiff's Complaint (ECF No. 1): Count I (Fraud) and Count II (Negligent Misrepresentation). In support, Penning states:

1. Plaintiff's Complaint asserts two counts against Penning individually: fraud (Count I) and, in the alternative, negligent misrepresentation (Count II). Both arise from Penning's alleged participation, alongside non-party Michigan Health Clinics, P.C. ("MHC")'s Chief Administrative Officer, in a telephone interview of Plaintiff in August 2023, before Plaintiff became employed by MHC.

2. Plaintiff alleges that MHC failed to pay him the compensation provided in his written employment agreement with MHC. Penning is not alleged to own MHC, to be a party to that agreement, to have set Plaintiff's compensation, or to have had authority to bind MHC. Plaintiff is pursuing the same unpaid wages from MHC and its principals in a related action, *Jayakumar v. Michigan Health Clinics, P.C., et al.*, No. 1:26-cv-11779 (E.D. Mich.).

3. In the present action, Count I fails to state a claim because: (a) the Complaint does not plead fraud with the particularity that Rule 9(b) requires; (b) the statements attributed to Penning during the interview about future conduct are not actionable fraud under Michigan law; (c) the general business descriptions are non-actionable puffery or opinion, or are not alleged to be false; and (d) the omission-based, silent fraud theory fails because Penning owed Plaintiff no duty to disclose.

4. Plaintiff's claim of negligent misrepresentation (Count II) fails to state a claim because a non-owner employee who participated in a prospective hire's interview owed him no duty of care to disclose the corporate employer's finances or payroll practices.

5. Both counts also fail because the Complaint does not plausibly plead reasonable reliance on Penning, as opposed to Plaintiff's written agreement with MHC, which contains an integration clause that expressly "supersedes and replaces

any prior written and/or verbal understandings," or that any such reliance, rather than MHC's alleged failure to pay under the agreement, caused Plaintiff's claimed loss.

6. Because these defects are substantive and cannot be cured by amendment, dismissal should be with prejudice.

7. This motion is supported by the accompanying Brief, which is incorporated by reference.

WHEREFORE, for the reasons further explained in the attached Brief, Defendant Jennifer Penning respectfully asks this Court to grant this motion, dismiss Count I (Fraud) and Count II (Negligent Misrepresentation) of Plaintiff's Complaint with prejudice, and grant such further relief as the Court deems just and proper.

Date: November 17, 2026

By: /s/Jeffrey C. Hart

Jeffrey C. Hart (P69217)
SMITH HAUGHEY RICE & ROEGGE
Attorneys for Defendant
213 S. Ashley Street, Suite 400
Ann Arbor, MI 48104
(734) 213-8000
jhart@shrr.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

DR. KISHORE JAYAKUMAR,

Plaintiff,

Case No. 1:26-cv-11779
Hon. Michael C. Martin

v.

consolidated with

JENNIFER PENNING

Case No. 1:26-cv-13091

Defendant.

---

**BRIEF IN SUPPORT OF DEFENDANT JENNIFER PENNING'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

## TABLE OF CONTENTS

**Index of Authorities** ........ iii

**Concise Statement of the Issues Presented** ........ 1

**Preliminary Statement** ........ 1

**Statement of Relevant Facts** ........ 2

**Standard of Review** ........ 5

**Law and Argument** ........ 6

I. The Complaint Does Not Plead Fraud With the Particularity That Rule 9(b) Demands ........ 6

II. The Statements Attributed to Penning Are Non-Actionable Promises of Future Conduct ........ 9

III. The Statements Attributed to Penning Are Non-Actionable Opinion or Puffery ....................10

IV. Penning Owed No Duty to Disclose, Defeating the Silent-Fraud Theory ....11

V. Count II Similarly Fails Because an Arm's-Length Job Interview Creates No Special Relationship or Duty of Care ....................14

VI. Plaintiff's Fully Integrated Employment Agreement Makes Reliance on Any Interview Remarks Unreasonable as a Matter of Law, and Proximate Cause Is Not Plausibly Plead ....................15

**Conclusion and Request for Relief** ....................18

## INDEX OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................*passim*

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................5, 6

*Blackwell v. Nocerini*, 123 F4th 479 (6th Cir. 2024) ...........................................16

*Derderian v. Genesys Health Care Sys.*, 263 Mich. App. 364; 689 N.W.2d 145 (2004) .................................................................................................................9

*Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938) ..........9

*Frank v. Dana Corp.*, 547 F.3d 564 (6th Cir. 2008) ...............................................7

*Fultz v. Union-Commerce Assocs.*, 470 Mich. 460; 683 N.W.2d 587 (2004) .........14

*Hamade v. Sunoco, Inc. (R&M)*, 271 Mich. App. 145; 721 N.W.2d 233 (2006) ...16

*Hester v. Chester Co, Tennessee*, 162 F4th 780 (6th Cir 2025) ...............................5

*Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich 330; 247 N.W.2d 813 (1976) .................................................................................................6, 9, 10, 11

*Hoover v. Langston Equip Assoc, Inc*, 958 F2d 742 (6th Cir. 1992) ...................7, 8

*Hord v. Env't Rsch. Inst. of Michigan*, 463 Mich. 399; 617 N.W.2d 543 (2000) ...12

*Jayakumar v. Michigan Health Clinics, P.C., et al.*, No. 1:26-cv-11779 (E.D. Mich.) ..........................................................................................................2, 16

*Law Offices of Lawrence J Stockler, PC v. Rose*, 174 Mich. App. 14; 436 N.W.2d 70 (1989) ..........................................................................................................14

*Luis v. Zang*, 833 F.3d 619 (6th Cir. 2016) .........................................................5

*M&D, Inc v. WB McConkey*, 231 Mich. App. 22; 585 N.W.2d 33 (1998) .......11, 12

*Mercurio v. Huntington Nat'l Bank*, 347 Mich. App. 662, 16 N.W.2d 748 (2023) ......................................................................................................12, 13

*Neaton v. Hartford Life & Acc Ins Co*, 517 Fed. Appx. 475 (6th Cir. 2013) ...........4

*Nieves v. Bell Indus., Inc.*, 204 Mich App 459; 517 N.W.2d 235 (1994) ...............15

*Novak v. Nationwide Mut. Ins. Co.*, 235 Mich. App. 675; 599 N.W.2d 546 (1999) ..........15, 16

*Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239 (6th Cir. 2012) .......8

*Soehnlen v. Fleet Owners Ins Fund*, 844 F3d 576 (6th Cir. 2016) ...........................7

*William Beaumont Hosp Sys v. Morgan Stanley & Co, LLC*, 677 Fed Appx 979 (6th Cir. 2017) ..........7, 8

*UAW-GM Human Res. Ctr. v. KSL Recreation Corp.*, 228 Mich. App. 486; 579 N.W.2d 411 (1998) ..........16

*Van Tassel v. McDonald Corp.*, 159 Mich. App. 745; 407 N.W.2d 6 (1987) .........10

**Rules and Statutes**

Fed. R. Civ. P 9(b) ..........2, 6, 7, 8

Fed. R. Civ. P 12(b)(6) ..........2, 5

## CONCISE STATEMENT OF THE ISSUES PRESENTED

1. Does Count I fail to state a claim against Penning where the Complaint groups her with another employee instead of identifying a false statement of her own; the statements that it does attribute to her are either non-actionable future promises or puffery or are conceded to be true; and its silent-fraud theory rests on a duty to disclose that Michigan law does not impose on an employee during a job interview?

2. Does Count II fail to state a claim because an arm's-length job interview created no special relationship or duty of care between Penning and Plaintiff?

3. Do both claims also fail to state a claim because any reliance on Penning's interview remarks was unreasonable once Plaintiff signed a fully integrated written agreement with MHC that sets his compensation and supersedes all prior verbal understandings; and his loss was caused by MHC's alleged nonpayment under the contract, rather than by anything that Penning said or failed to say?

## PRELIMINARY STATEMENT

This is a wage dispute between a physician and his former employer, re-characterized as a fraud claim against a nurse. By his own account, Plaintiff Dr. Kishore Jayakumar contracted with Michigan Health Clinics, P.C. ("MHC") to provide telehealth dermatology services in exchange for compensation based on Relative Value Units ("RVUs"), performed the work, and was largely not paid. He is already suing MHC, its owner Dr. David Stockman, its Chief Administrative Officer Magdalena Perez, and Brian Hart for those wages in a related case before Judge DeClercq.

In this separate action, Plaintiff now seeks the same unpaid wages from Defendant Jennifer Penning, a former MHC nurse practitioner alleged "upon

information and belief" to have held a clinical leadership title, who ostensibly participated in Plaintiff's 40-minute telephone interview three years ago, but who is *not* alleged to own MHC, to be a party to his employment agreement, to have set his compensation, or to have had authority to bind MHC to any term. Michigan law does not make an employee who sits in on a job interview the guarantor of her employer's payroll. The Complaint pleads no actionable misrepresentation, no duty to disclose, no special relationship, no fraud with the particularity that Rule 9(b) demands, and no plausible reliance on Penning, as opposed to the written MHC contract. It should be dismissed with prejudice.

## STATEMENT OF RELEVANT FACTS

The following is drawn from the allegations of the Complaint, which are taken as true solely for purposes of the analysis of a motion under Rule 12(b)(6).

Plaintiff is a dermatologist and a citizen of the District of Columbia. (ECF No. 1, PageID.1–2, ¶¶ 1, 6). Penning, now a New Mexico resident, is alleged "[u]pon information and belief" to be "a dermatology nurse practitioner who was employed by MHC." (*Id.* PageID.2, ¶¶ 2, 7). Plaintiff pleads that this action "is related to" *Jayakumar v. Michigan Health Clinics, P.C., et al.*, No. 1:26-cv-11779 (E.D. Mich.), which "arises from Dr. Jayakumar's employment by [MHC] and resulting unpaid wages," and that "Penning is not presently a defendant in that action." (*Id.*, ¶ 5). The

defendants named in that action are MHC, David Stockman, M.D., Magdalena Perez, and Brian Hart. (*Id*. at PageID.1).

The Complaint alleges that Plaintiff was "recruited by several members of MHC, including Penning." (*Id*., PageID.3, ¶ 10). "[O]n or about August 29, 2023, Penning, together with MHC's Chief Administrative Officer Magdalena Perez, conducted an approximately 40-minute telephone interview" with Plaintiff that covered MHC's operations and his proposed schedule, benefits, and compensation. (*Id*., ¶¶ 11–12). Plaintiff stated that he wanted RVU-based compensation, (*id*., ¶ 14), and Perez "stated that MHC provided RVU-based compensation incentives under employee contracts." (*Id*., PageID.4, ¶ 17).

According to Plaintiff, Penning's statements "reinforced Perez's representation." (*Id*., ¶ 19). Penning allegedly "stated that she would speak with Dr. Stockman about an appropriate RVU goal and that MHC would develop an appropriate RVU-based compensation structure." (*Id*., ¶ 18). Plaintiff allegedly asked "Penning and Perez" for "background information on MHC" and "inquired about MHC's history, organization, and current focus." (*Id*., PageID.5, ¶ 21). Penning described MHC as an "established, expanding" clinic. (*Id*., PageID.7, ¶ 34).

Plaintiff "became employed by MHC on or about November 1, 2023." (*Id*. PageID.5, ¶ 22). His written employment agreement with MHC—which Plaintiff himself filed in the related action—is attached as **Exhibit A**. (*See* Case No. 1:26-cv-

11779, ECF No. 2-1, PageID.23–28). It is "by and between" MHC and Plaintiff, effective November 1, 2023, and was signed on behalf of MHC by Perez on October 19, 2023; Penning is not a party to or signatory of the Agreement. (**Ex. A**, PageID.23, 28). Plaintiff alleges that the agreement "adopted an RVU-based compensation structure," providing for $60 per net RVU. (ECF No. 1, ¶ 23; see also **Ex. A**, PageID.23–24). Plaintiff further alleges that he earned $141,972.60, was paid $10,500, and is owed $131,472.60, and that "MHC substantially failed to pay the corresponding RVU-based compensation it had promised him." (ECF No. 1, PageID.6, ¶¶ 27, 29–31).

In the instant action, Plaintiff alleges that "Perez's statements . . . were knowingly misleading" (*id.*, PageID.7, ¶ 33); that Penning "failed to correct or qualify Perez's false or misleading statements," (*id.*, ¶ 35); and that "Penning's statements that MHC was an established, expanding multispecialty clinic [were] false" (*id.*, ¶ 34). Plaintiff further alleges that Penning did not disclose MHC's payroll problems, its lawsuits and judgments, or that a prior dermatologist and Moh's surgeon,[1] Dr. Nasir, had left in early 2023 over nonpayment. (*Id.*, PageID.7, ¶¶ 35–41). The Complaint alleges that Penning acted "intentionally or recklessly," (*id.*, PageID.11, ¶ 56), and pleads her role and knowledge "upon information and belief."

[1] Moh's surgeries are necessary when certain cancers have progressed too far and are more invasive, sometimes requiring skin grafts. *Neaton v. Hartford Life & Acc Ins Co*, 517 Fed. Appx. 475, 477 (6th Cir. 2013).

(*id.*, PageID.2, ¶ 7). Plaintiff asserts two counts against Penning individually: fraud (Count I) and, in the alternative, negligent misrepresentation (Count II). (*Id.*, PageID.10,12).

**STANDARD OF REVIEW**

When ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court may consider "the complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein." *Luis v. Zang*, 833 F.3d 619, 626 (6th Cir. 2016). Plaintiff's Employment Agreement qualifies on every count. The Complaint relies on it to plead the compensation that Plaintiff was promised (ECF No. 1, PageID.5, ¶ 23), and his alleged loss is the RVU compensation unpaid under it (*id.*, PageID.6, ¶¶ 29–31). The Employment Agreement is also a public record in the related action, where Plaintiff filed it. (Case No. 1:26-cv-11779, ECF No. 2-1).

The Court must construe the allegations of the complaint in the light most favorable to plaintiff and accept all well-pled factual allegations as true. *Hester v Chester Co, Tennessee*, 162 F4th 780, 784 (6th Cir 2025). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. Where the pleaded facts "do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown entitlement to relief. *Id*. at 679.

## LAW & ARGUMENT

### I. The Complaint Does Not Plead Fraud With the Particularity That Rule 9(b) Demands.

A fraud plaintiff must plead and prove that (1) the defendant made a material representation; (2) it was false; (3) when made, the defendant knew it was false or made it recklessly, without knowledge of its truth, as a positive assertion; (4) the defendant made it with the intent that the plaintiff act on it; (5) the plaintiff acted in reliance on it; and (6) the plaintiff suffered injury. *Hi-Way Motor Co. v. Int'l Harvester Co*., 398 Mich 330, 336; 247 N.W.2d 813 (1976). The failure to plead and prove any element is fatal. *Id*.

Because fraud claims carry "a high risk of abusive litigation," *Twombly*, 550 U.S. at 569 n. 14, a plaintiff "must state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b). In the Sixth Circuit, this means that a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4)

explain why the statements were fraudulent." *William Beaumont Hosp Sys v Morgan Stanley & Co, LLC*, 677 Fed Appx 979, 983 (6th Cir. 2017) (quoting *Frank v. Dana Corp*., 547 F.3d 564, 570 (6th Cir. 2008)). When multiple speakers are involved, the Complaint's averments of fraud must specify which defendant made which particular statement. See *Hoover v. Langston Equip Assoc, Inc*, 958 F2d 742, 745 (6th Cir. 1992) (affirming dismissal under Rule 9(b) when the complaint did not identify which of the defendants made each fraudulent statement). These heightened pleading requirements are designed to "prevent fishing expeditions," to alert the defendants "to the precise misconduct with which they are charged," and to protect a defendant's reputation from "spurious charges of immoral and fraudulent behavior." *Soehnlen v. Fleet Owners Ins Fund*, 844 F3d 576, 586-587 (6th Cir. 2016) (quotation marks and citation omitted).

The Complaint in the present case does not meet these standards. It attributes the only concrete representation about MHC's RVU system to Perez—"Perez stated that MHC provided RVU-based compensation incentives under employee contracts" (ECF No. 1, PageID.4, ¶ 17)—and then charges Penning with fraud simply for "reinforc[ing]" that statement. (*Id*., ¶ 17). Within the paragraphs meant to establish Penning's liability, the Complaint alleges that "Perez's statements . . . were knowingly misleading," and then, that "Penning's statements" were false. (*Id*.,

PageID.7, ¶¶ 33-34). It further faults Penning for failing "to correct or qualify Perez's" statements (*Id*. PageID.7, 10, ¶¶ 35, 53).

This blending matters. The law does not allow the Complaint to group two speakers together and attribute a single, undifferentiated "impression" (*id*., PageID.10, ¶ 54) to both. See *William Beaumont*, 677 Fed Appx at 983; *Hoover*, 958 F2d at 745. Such pleading does not tell Penning which of her own words are said to be false, when she is alleged to have spoken them, or why they were fraudulent. See *William Beaumont*, 677 Fed Appx at 983. That is fatal: a fraud claim cannot proceed under Rule 9(b) where the complaint "nowhere . . . indicate[s] when, where, or to whom the alleged misstatement was made." *Republic Bank & Tr. Co. v. Bear Stearns & Co*., 683 F.3d 239 (6th Cir. 2012).[2]

The scienter allegations are no better. The Complaint pleads Penning's knowledge of MHC's payroll history "upon information and belief" (ECF No. 1, PageID.6,11, ¶¶ 28, 57) and offers no facts showing that, at the time of the August 2023 call, Penning knew of MHC's payroll practices or Dr. Nasir's reasons for leaving. Conclusory assertions that she "intentionally or recklessly" withheld

---

[2] The primary statements that the Complaint attributes to Penning specifically—that she "would speak with Dr. Stockman," that MHC "would develop" an RVU structure, and that the practice is "established" and "expanding" (ECF No. 1, PageID.4,7 ¶¶ 18, 34)—are addressed in Parts II and III and are not actionable in any event.

information (*id*., PageID.11, ¶ 56) are precisely the legal conclusions the Court must disregard. See *Iqbal*, 556 U.S. at 679.

### II. The Statements Attributed to Penning Are Non-Actionable Promises of Future Conduct.

Even if the Complaint had pleaded Penning's statements with sufficient particularity, those statements are not actionable. Michigan law requires that a fraud claim rest on "a material representation" that is false and known to be false when made. *Hi-Way Motor Co. v. Int'l Harvester Co*., 398 Mich. 330, 336–337; 247 N.W.2d 813 (1976).[3] Critically, "an action for fraudulent misrepresentation must be predicated upon a statement relating to a past or an existing fact," because "[f]uture promises are contractual and do not constitute fraud." *Id*. at 336. Likewise, "evidence of a broken promise is not evidence of fraud." *Derderian v. Genesys Health Care Sys*., 263 Mich. App. 364, 378–379; 689 N.W.2d 145 (2004). A narrow exception exists for promises made in bad faith without any present intention to perform. *Hi-Way Motor Co*., 398 Mich. at 337–338.

The statements that the Complaint attributes to Penning are quintessential future promises: that she "would speak with Dr. Stockman about an appropriate RVU goal and that MHC would develop an appropriate RVU-based compensation structure." (ECF No. 1, PageID.4, ¶ 18). Both are statements about the future, not

---

[3] Under the *Erie* Doctrine, the substantive law of Michigan governs this diversity action. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938).

representations of past or existing fact. In addition, the second is a statement about what a different entity, MHC, would do.

The narrow bad-faith exception does not apply because it requires facts showing that Penning had no intent of keeping those promises "at the very time of making the representations," *Hi-Way Motor Co.*, 398 Mich. at 339, and the Complaint pleads no facts that would support that inference. Indeed, the Complaint affirmatively pleads the opposite. MHC did "develop" an RVU-based structure: "Dr. Jayakumar's written employment agreement adopted an RVU-based compensation structure," paying "$60 per 'net RVU.' " (ECF No. 1, PageID.5, ¶ 23). Therefore, the only inference is that the promise attributed to Penning was kept. Plaintiff's grievance is that MHC later failed to pay under that agreement (*id*., PageID.6 ¶ 29), which is a breach of contract by MHC, not fraud by Penning.

## III. The Statements Attributed to Penning Are Non-Actionable Opinion or Puffery.

Expressions of opinions and generalized, optimistic descriptions of a business that are "sales talk" or "puffing" cannot support an allegation of fraud. *Van Tassel v. McDonald Corp*., 159 Mich. App. 745, 750; 407 N.W.2d 6 (1987). In this case, the statements attributed to Penning, that MHC was "an established, expanding multispecialty clinic" and "an expanding dermatology clinic with multiple other professionals and unlimited clients" (ECF No. 1, PageID.7, ¶¶ 34, 38), are classic puffery. "Expanding" and "established" are generalized, subjective, and

unmeasurable. “Unlimited clients” is hyperbole that no reasonable physician would take literally. The Complaint does not allege facts showing that these descriptions were false when made: it pleads no facts about MHC’s size, specialties, locations, or patient volume in August 2023. It alleges payroll problems and lawsuits (*id.*, PageID.8, ¶¶ 42–43), but a business can be established, multispecialty, and expanding while also having payroll and litigation problems. Plaintiff’s bare assertion that the description “was false” (*id.*, PageID.7, ¶ 34), is the kind of conclusion that *Iqbal* disregards. 556 U.S. at 678.

The only concrete factual statement attributed to Penning is that “MHC did not have [a] Mohs surgeon and that patients requiring Mohs surgery were referred elsewhere.” (ECF No. 1, PageID.8, ¶ 39). Plaintiff does not allege that this statement was false; in fact, his own theory is that the Mohs surgeon, Dr. Nasir, “had left MHC only months earlier.” (*Id.*, ¶ 40). A true statement cannot support a fraud or negligent misrepresentation claim. *Hi-Way Motor,* 398 Mich at 336.

## IV. Penning Owed No Duty to Disclose, Defeating the Silent-Fraud Theory.

Stripped of the future promises and opinion, the Complaint reduces to a claim that Penning stayed silent about MHC’s finances. So-called “silent fraud” is a “commonly asserted, but frequently misunderstood, doctrine” that requires a plaintiff to “set forth a more complex set of proofs” than claims of affirmatively stated false representations of material fact. *M&D, Inc v WB McConkey*, 231 Mich.

App. 22, 28; 585 N.W.2d 33 (1998). For silent fraud, a plaintiff must plead and prove that the defendant knew of a material fact, suppressed it, and had a legal or equitable duty to disclose it. *Mercurio v. Huntington Nat'l Bank*, 347 Mich. App. 662, 681–683, 16 N.W.3d 748, 760–761 (2023). Crucially then, even if a defendant knew *and* suppressed a material fact, their "silence cannot constitute actionable fraud unless it occurred under circumstances where there was a legal duty of disclosure." *M&D, Inc*, 231 Mich. App. at 29.

Whether such a duty exists is a threshold question of law for the Court. *Mercurio*, 347 Mich. App. At 682. That duty "generally applies in the context of fiduciary or comparable relationships." *Mercurio*, 347 Mich. App. at 683. There is "no duty to disclose in an ordinary contract setting except when a party is responding to a specific inquiry." *Id*. That is, a duty *may* arise when there is "a direct inquiry or when a particularized concern is expressed," and a defendant provides a "misleadingly incomplete response." *Id*.; see also *Hord v. Env't Rsch. Inst. of Michigan*, 463 Mich. 399, 412–413; 617 N.W.2d 543 (2000).

The Complaint pleads no relationship that could give rise to such a duty. First, assuming arguendo that the Complaint sufficiently pleads that Penning *actually knew* material facts about MHC's litigation and payroll issues at the time of Plaintiff's interview, the Complaint identifies no specific inquiry about those subjects. Plaintiff asked only for "background information on MHC" and about

"MHC's history, organization, and current focus." (ECF No. 1, PageID.5, ¶ 21). He does not allege that he asked about MHC's payroll practices, its finances, litigation against MHC or Dr. Stockman, check-kiting, or why any prior physician left. A general request for background does not trigger a duty to volunteer information about an employer's internal financial and legal affairs. See *Mercurio*, 347 Mich. App. at 683 (requiring a "specific," "direct," or "particularized" inquiry to create a disclosure duty).

Second, no partial or "incomplete" statement by Penning was rendered misleading by the alleged omissions. The future-tense compensation statements (Part II) did not represent anything about MHC's payroll history or litigation. The opinions and puffery (Parts III) are not actionable. The statement that MHC did not have a Mohs surgeon was true (ECF No. 1, PageID.8, ¶ 39). Plaintiff's real theory is that Penning was obligated to "correct or qualify Perez's" statements. (Id., PageID.7, 10, ¶¶ 35, 53) Plaintiff cites no Michigan authority, and Penning is aware of none, imposing on an employee who participates in an interview a duty to correct another speaker's statements, made on behalf of a non-party employer, about subjects that the plaintiff never asked about.

Third, Plaintiff's allegation of a continuing post-hire duty to "warn" him (id., PageID.9, ¶ 48) has no legal basis. After November 1, 2023, Plaintiff and Penning were co-employees of MHC. (Id., PageID.5, ¶ 22). The Complaint identifies no

source in Michigan law for a duty owed by one co-worker to another to disclose the employer's finances. Paragraph 55's assertion that Penning "had a duty to disclose" is a legal conclusion. See *Iqbal*, 556 U.S. at 678. Because the Complaint pleads no duty to disclose, the silent-fraud theory fails as a matter of law.

## V. Count II Similarly Fails Because an Arm's-Length Job Interview Creates No Special Relationship or Duty of Care.

The negligent-misrepresentation count (Count II) fails on the same basis. That claim requires that the plaintiff "justifiably relied to his detriment on information provided without reasonable care by one who owed the relying party a duty of care." *Law Offices of Lawrence J Stockler, PC v Rose*, 174 Mich. App. 14, 33; 436 N.W.2d 70 (1989). Whether a duty exists is a question of law for the Court. *Fultz v. Union-Commerce Assocs*., 470 Mich. 460, 463; 683 N.W.2d 587 (2004).

As discussed, the Complaint identifies no source of a duty of care running from an individual nurse practitioner to a prospective physician during a job interview regarding the financial condition of a corporate employer that she did not own or control. A job interview is an arm's-length negotiation, and Plaintiff was negotiating with MHC, not with Penning. The Complaint does not allege that Penning had a fiduciary, professional, or advisory relationship with Plaintiff, that she held herself out as supplying information for his guidance, or that she had any financial interest in his hiring.

The Complaint's "undertaking" theory, that Penning had a duty of care because she "undertook to discuss" MHC and responded to Plaintiff's inquiries (id., PageID.10–12, ¶¶ 55, 63), is circular. On that reasoning, anyone who speaks with a job applicant would owe a tort duty to guarantee the employer's future performance. Michigan law does not recognize such a duty, and this conclusory allegation does not plausibly plead one. See *Iqbal*, 556 U.S. at 678. Count II should be dismissed.

## VI. Plaintiff's Fully Integrated Employment Agreement Makes Reliance on Any Interview Remarks Unreasonable as a Matter of Law, and Proximate Cause Is Not Plausibly Pleaded.

Fraud and negligent misrepresentation both require reliance, and that reliance must be reasonable. *Novak v. Nationwide Mut. Ins. Co.*, 235 Mich. App. 675, 689–691; 599 N.W.2d 546 (1999); *Nieves v. Bell Indus., Inc.*, 204 Mich App 459, 464–465; 517 N.W.2d 235 (1994). Michigan courts have held that reliance on pre-employment oral statements is *unreasonable* where the plaintiff later entered into a written agreement governing the terms of employment. See *Nieves*, 204 Mich App at 464–465.

That rule applies with particular force where, as here, the written agreement contains an integration clause. Under Michigan law, a valid integration clause nullifies prior agreements, including collateral promises allegedly made to induce the contract, and renders reliance on representations not included in the written contract unreasonable as a matter of law, unless the plaintiff alleges fraud that

invalidates the merger clause itself or the entire contract. *UAW-GM*, 228 Mich. App. at 502–504 (applying the rule to fraud, silent fraud, and innocent misrepresentation); *Hamade*, 271 Mich. App. at 170–171 (applying the rule to silent fraud, fraudulent misrepresentation, and innocent misrepresentation); *Novak*, 235 Mich. App. 675, 689–691 (determining that a written employment contract "with its integration clause" made reliance on contradicted oral statements unreasonable).

Applied here, the result is straightforward. The Complaint expressly relies on and quotes Plaintiff's written agreement with MHC (ECF No. 1, PageID.5, ¶ 23), and that agreement is attached as Exhibit 1 to Plaintiff's own complaint in the related action. (*Jayakumar v. Michigan Health Clinics, P.C., et al.*, No. 1:26-cv-11779, ECF No. 2-1).[4] Article 11 of the agreement provides: "This Agreement contains the entire agreement of the Parties regarding this subject matter and supersedes and replaces any prior written and/or verbal understandings and/or agreements. No amendments or modifications of this Agreement shall be binding upon the Parties unless made in writing signed by the Parties." (**Ex. A**, Art. 11). The agreement further recites that Plaintiff "has been advised to seek the advice of independent counsel," "had the opportunity to seek the advice of independent counsel prior to executing this

---

[4] As noted, because the agreement is referenced in the Complaint, is central to Plaintiff's claims, and is a matter of public record, the Court may consider it without converting this motion into one for summary judgment. See *Blackwell*, 123 F4th at 486–487.

Agreement," and "has had all information necessary to make an informed decision with regard to this Agreement." (*Id.*, Art. 14). Plaintiff signed it on October 19, 2023, nearly two months after the August 29, 2023 telephone interview on which his claims against Penning rest. (*Id.* at PageID.28; ECF No. 1, PageID.3, ¶ 11).

The Complaint concedes that Plaintiff was a sophisticated professional negotiating his own compensation structure. (ECF No. 1, PageID.3, ¶¶ 6, 14). Even accepting Plaintiff's allegations as true, any statement by Penning about compensation was, by Plaintiff's own contract, replaced by the written agreement. Plaintiff, a physician who was advised to consult independent counsel, cannot plausibly claim to have relied on a non-party nurse practitioner's interview remarks rather than on the integrated contract that he signed. Nor does it matter that Penning was not a party to the agreement: the question is whether Plaintiff's reliance on pre-contract statements about compensation was *reasonable*, and the merger clause that he agreed to answers that question regardless of who made those statements. Plaintiff's fraud and negligent misrepresentation claims therefore fail as a matter of law for lack of reasonable reliance.

Along the same lines, Plaintiff fails to plead that his reliance on Penning's alleged statements caused his alleged financial loss. Plaintiff's claimed detriment is "the value of medical services that he was not paid for" (*id.*, PageID.11,13, ¶¶ 60, 67), that is, the $131,472.60 in unpaid wages MHC allegedly owes under the

agreement (*id*., PageID.6, ¶ 31). The cause of that loss, as Plaintiff pleads it, is that "MHC substantially failed to pay the corresponding RVU-based compensation it had promised him." (*Id*., ¶ 29). Plaintiff is pursuing that injury against MHC in the related action. (*Id*., PageID.2, ¶ 5). The Complaint pleads no facts plausibly linking Plaintiff's reliance on Penning's statements—as opposed to MHC's later decision not to pay under the contract—to the claimed loss.

## CONCLUSION AND REQUEST FOR RELIEF

Neither Count I nor Count II states a claim. The defects are not technical pleading gaps that re-pleading could cure. Stripped of its labels, the Complaint asks the Court to hold a non-owner employee personally liable for her employer's alleged breach of a contract that she did not sign, based on statements that she did not make or that are not actionable. For these reasons, Defendant Jennifer Penning respectfully asks this Court to grant this motion, dismiss Count I (Fraud) and Count II (Negligent Misrepresentation) of Plaintiff's Complaint with prejudice, and grant such further relief as the Court deems just and proper.

Date: November 17, 2026

By: */s/Jeffrey C. Hart*
Jeffrey C. Hart (P69217)
SMITH HAUGHEY RICE & ROEGGE
Attorneys for Defendant
213 S. Ashley Street, Suite 400
Ann Arbor, MI 48104
(734) 213-8000
jhart@shrr.com

**PROOF OF SERVICE**

The undersigned certifies that on November 17, 2026, a copy of the foregoing document was electronically filed and counsel of record received notice via the Court's ECF system.

*/s/ Robin Thompson*
Robin Thompson